**Susan JASKOWSKI, Plaintiff,**

v.

**RODMAN & RENSHAW, INC., Norman Mains, Gregory P. Quinlivan and Kurt Karmin, Defendants.**

**No. 92 C 4161.**

United States District Court, N.D. Illinois, E.D.

Jan. 10, 1994.

Mary Stowell, Leng, Stowell, Friedman & Vernon, Chicago, IL, for plaintiff.

Steven L. Loren, Adrianne Clarise Mazura, Howard L. Teplinsky, Sally J. McDonald, Rudnick & Wolfe, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action stems from alleged sexual harassment and discrimination committed by defendants Rodman & Renshaw, Inc. ("Rodman & Renshaw"), Norman Mains ("Mains"), Gregory Quinlivan ("Quinlivan"), and Kurt Karmin ("Karmin") (collectively "defendants") against plaintiff Susan Jaskowski ("Jaskowski"). Currently before us is defendants' motion for summary judgment. For the following reasons, we grant the motion in part and deny it in part.

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Moreover, we must view the record and all possible inferences in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 922 (7th Cir. 1988). Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby,* 477 U.S.

242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. Factual Background[1]

Jaskowski worked for Rodman & Renshaw, a stock brokerage firm, from 1981 until October of 1991, when she took a pregnancy leave of absence. Having started as a clerk in the mail room, Jaskowski worked her way up through the ranks at Rodman & Renshaw to become Vice President, Director of Human Resources in 1989. Her salary at the time she left the firm was $50,760. At the relevant times, Mains was President of the company, Quinlivan was Executive Vice President and General Counsel, and Karmin was Chairman of the Board and a member of the Executive Committee.

After Jaskowski became pregnant in 1991, several co-workers made objectionable comments about her condition. In addition to rubbing Jaskowski's stomach uninvited, Mark Grant, an Executive Vice President, commented on the enlargement of pregnant women's breasts, and remarked that he wanted to work only with young, attractive females. Lawrence Helfand, another Executive Vice President, stated that Jaskowski "should have stayed at [her] desk rather than out getting pregnant," and suggested that he was "going to have to tell [plaintiff's husband] to keep his penis in his pants." Cmplt. at ¶ 13(c). Finally, two other Executive Vice Presidents, not named as defendants, told Jaskowski that they suspected she had tried to get pregnant, while Karmin commented that his pregnant secretary would not return to work, as her place was at home with her baby.

In the fall of 1991, Jaskowski's doctor informed her that she would need to take a medical leave of absence in connection with the pregnancy. Rodman & Renshaw has the following medical leave policy:

If you are a regular employee and become disabled for at least 30 consecutive days you may be granted a Medical Leave of Absence without pay. The maximum duration of a Medical Leave of Absence is six months. When you are ready to return to work, you must inform the Human Resources Department in writing, at least one week prior to your expected return. You will be offered your original position if and when it becomes available within twelve months of when your Leave began. If your position does not become available, the Company will attempt to find a comparable position for you based on your skills and education. However, the Company is not obligated to create an opening for you. If you are offered your former position or a comparable one and do not accept the offer you will be terminated from the Company.

Despite this policy, Jaskowski alleges that before she took her medical leave of absence, both Mains and Quinlivan assured her, on several occasions, that when she came back from maternity leave, she would return to her old position or one of comparable pay and responsibility. Defendants, however, maintain that they gave Jaskowski no such assurances. Indeed, Mains asserts that he specifically apprised Jaskowski that the company was considering hiring an acting Director of Human Resources during her absence and that they did not know what that decision would mean for Jaskowski.[2] In fact, shortly after this conversation, Rodman & Renshaw placed an ad in the Wall Street Journal seeking applicants for Director of Human Resources and notified Jaskowski of this development.

Jaskowski began her leave of absence in October, 1991, and in December, Rodman & Renshaw hired a man named Brian Garvey to fill her position. Garvey boasted an un-

---

1. In its Reply, defendants challenge the foundation of many of the documents plaintiff submits in connection with her Response and 12(n)(1) and 12(n)(2) statements. We need not address defendants' criticisms, because plaintiff adequately establishes the requisite foundation and identification of all relevant documents in her Surreply.

2. Jaskowski's personal notes reflect that on October 24, 1991, Mains came into her office and "said he was considering hiring an acting Dir[ector] of [Human Resources.]" When Jaskowski asked what that meant to her job, "he said, he'll see," and added that "[Jaskowski] would have a comparable job if [she] wanted to return." Finally, "he said it (replacement) would be up to executive committee." Plaintiff's Exh. 4.

dergraduate and graduate degree in Business Administration, a law degree, and over 20 years of experience in human resources. Immediately prior to joining Rodman & Renshaw, Garvey served as Chief Human Resources Officer for the American Bar Association at an annual salary of $95,400. His starting salary at Rodman & Renshaw was $70,000. After Rodman & Renshaw hired Garvey, it notified Jaskowski that the position of Vice President, Director of Human Resources had been filled. However, according to Jaskowski, it was not until February 14, 1992 that she learned that she would not resume her duties as Vice President, Director of Human Resources when she returned and that it was unclear whether a position of comparable pay and responsibility would be available for her. Plaintiff's Exh. 6.

When Jaskowski sought to return from her maternity leave, Rodman & Renshaw offered her a job as a mutual funds clerk—a position that paid less than half the salary she had earned as a Vice President and one which Rodman & Renshaw admits was not comparable to her former title. Having assured her that it would continue to search for a comparable job, the firm later notified Jaskowski of an opening for an Assistant Director of Human Resources at a salary of $37,500. Believing that the position was a demotion and disliking the lower pay, Jaskowski did not accept the job at that time. The next month, Garvey informed Jaskowski that the Assistant Director's position had been changed and that the salary had been increased to $42,000. Once again, Jaskowski refused the offer.[3]

### III. Discussion

### A. Individual Defendants' Liability Under Title VII and the Equal Protection Act (Counts I, II, III, and IV)

■ At the outset, the individual defendants contend that they cannot be sued as employers under either Title VII or the Equal Protection Act. As Jaskowski openly concedes, we have previously ruled on this

issue, finding that neither Act permits suit against individuals.[4] *See Pommier v. James L. Edelstein Enterprises,* 816 F.Supp. 476 (N.D.Ill.1993); *Pelech v. Klaff–Joss,* 828 F.Supp. 525 (N.D.Ill.1993). Accordingly, we grant summary judgment in favor of the individual defendants on Counts I, II, III and IV.

### B. Equal Pay Act Claim (Count IV)

Defendants argue that Jaskowski has failed to establish a prima facie violation of the Equal Pay Act and that, in any event, the undisputed facts demonstrate that the wage disparity is based on factors other than gender. We address these contentions in turn.

#### 1. Prima Facie Case

■ In order to prove a violation of the Equal Pay Act, a plaintiff may either present direct evidence that an employer intentionally depressed her salary because she was a woman, or set forth a prima facie case that a violation occurred. *Jones v. Chicago Research & Trading Group, Lt.,* No. 88 C 8532, 1991 WL 70889 (N.D.Ill. April 29, 1991). To establish a prima facie case, a plaintiff must demonstrate (1) that different wages were paid to employees of the opposite gender, (2) that the employees performed equal work requiring substantially similar skill, effort and responsibility, and (3) that the employees labored under similar working conditions. 29 U.S.C. § 206(d)(1). *See also Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333 (7th Cir.1993) (setting forth the elements of a prima facie case). Failure to make the requisite showing on any of these elements dooms Jaskowski's claim.

■ In its motion, Rodman & Renshaw points out that Jaskowski bears the burden of proof on these issues and contends that she has been unable to raise a material question of fact concerning the similarity between the jobs she and Garvey performed. Resting primarily on its argument that Jaskowski has not made a sufficient showing, the company

---

**3.** In addition to the jobs she was offered, Jaskowski points out that she was *not* offered the job of Trading Assistant, which paid roughly $56,000 in salary and commissions in 1992–93 and for which she claims she was qualified.

**4.** Although Jaskowski acknowledges this Court's rulings, she seeks to preserve these issues for appeal.

also points out that prior to hiring Garvey, Rodman & Renshaw enhanced the duties of the Human Resources Director, thus materially changing the nature of the job. Defendant's argument, however, must fail.

Jaskowski has created a genuine issue of fact regarding the similarity of the Human Resources work performed by Jaskowski and by Garvey. Plaintiff offers evidence that in addition to holding the same job title as Jaskowski, Garvey's written job description was virtually identical to plaintiff's.[5] Although Rodman & Renshaw acknowledges the paper similarity between the two jobs, it argues that the tendered job description does not reflect the work Garvey *actually* performed. While we recognize that Jaskowski ultimately must prove that she and Garvey actually performed substantially similar tasks, absent evidence to the contrary, she has raised a genuine question regarding the correspondence between the functions managed by the two Directors.[6] We therefore deny summary judgment on Count IV.

### 2. Wage Disparity Based on Other than Gender

■ Next, defendants contend that the undisputed facts establish that factors other than gender underlie the contested wage disparity. Specifically, the company asserts that Garvey received a heftier salary because (1) his position involved enhanced responsibilities, and (2) he had better qualifications and greater experience than did Jaskowski. Material questions of fact remain in connection with each of these defenses.

As discussed above, there is a genuine issue of fact in connection with Rodman & Renshaw's claims that they upgraded the position of Director of Human Resources. As for its claims that Garvey's qualifications justified a higher salary, these, too, are disputed. First, there is evidence that Rodman & Renshaw set a target salary of $70,000 for Jaskowski's replacement before it began interviewing applicants for the job. Quinlivan Dep. at 80–81. The establishment of and adherence to a target salary calls into question the company's assertion that Garvey's pay was a product of his unique set of skills and experience arrived at after analyzing his former salary (of $95,400) and his background.

On the other hand, the fact that the target salary was higher than Jaskowski's outgoing income is consistent with Rodman & Renshaw's claim that it was seeking a more experienced and credentialed Human Resources Director to fill the upgraded position.[7] As discussed above, however, a genuine fact issue surrounds the company's claim that it actually upgraded the Director's position, allowing for an inference that Rodman & Renshaw's proffered grounds for paying Garvey a higher salary are merely pretext.[8] Accordingly, we decline to grant summary judgment on this basis.

### C. Title VII Wage Discrimination Claim (Count II)

■ To prevail on a Title VII wage discrimination claim, a plaintiff must either proffer direct evidence of intentional sex discrimination in pay, or meet the equal pay standard of the Equal Pay Act (outlined above).[9] *See, E.E.O.C. v. Sears Roebuck & Co.,* 839 F.2d 302, 342–43 (7th Cir.1988);

---

5. Plaintiff tenders as evidence the written job description that was handed to Garvey during his interview along with her own job description as contained in written performance evaluations and attested to by Karmin. Plaintiff's Exhs. 2 & 3; Karmin Dep. at 51–54.

6. Significantly, defendants have submitted no evidence of Garvey's actual job duties. Additionally, the failure of Garvey's job description to reflect any meaningful revisions of the Director's responsibilities casts doubt on Rodman & Renshaw's purported decision to upgrade the Director's position. It is, to say the least, implausible that a company would materially revamp a significant position without putting any of the changes into writing.

7. Indeed, it appears that Jaskowski would not have qualified for the position as advertised in the Wall Street Journal.

8. Notably, Rodman & Renshaw does not assert that its search for a more qualified Director was prompted by other than the need to fill the upgraded position.

9. It is, however, unclear what constitutes a prima facie case of wage discrimination under Title VII. *See Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 338 (7th Cir.1993).

*American Nurses' Association v. Illinois,* 783 F.2d 716 (7th Cir.1986). Rodman & Renshaw contends that summary judgment is warranted on this claim because Jaskowski cannot establish a prima facie claim of unequal pay for equal work, and, in any event, the company has demonstrated legitimate non-discriminatory bases for any pay disparity. Because defendant raises no new arguments in seeking summary judgment on the Title VII wage claims, and because we have already found its arguments wanting, we deny Rodman & Renshaw's motion for judgment on this claim.

### D. Promissory Estoppel Claim

 Defendants contend that no disputed facts remain regarding Jaskowski's promissory estoppel claim. Under Illinois law, a promissory estoppel plaintiff must show that (1) defendants made an unambiguous promise, (2) plaintiff relied on the promise, (3) defendants could have expected or foreseen such reliance, and (4) plaintiff relied on the alleged promise to her detriment. *See Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 565 N.E.2d 990, 1004, 152 Ill.Dec. 308, 322 (1990) (setting forth the elements of a promissory estoppel claim). Defendants argue that the undisputed facts on each element direct a finding of summary judgment on this claim. We disagree.

First, defendants maintain that Jaskowski has failed to offer evidence of an unambiguous promise. Before assessing this assertion, we must first clarify the nature of the alleged promise at issue. In her Amended Complaint, Jaskowski alleges that she relied to her detriment on defendants' promise that when she returned to work after her pregnancy leave, she would be able to step into her former position or one of comparable pay and responsibility. Amended Complaint at ¶ 40. In support of her claim, Jaskowski alleges that both Quinlivan and Mains, on several occasions, assured her that upon her return she would get her old job back or be placed in a comparable position. Indeed, Jaskowski offers handwritten notes ostensibly summarizing one such conversation with Mains, and tenders a letter written by Mains

for Jaskowski's file memorializing a conversation between the two regarding Jaskowski's maternity leave. In the letter, Mains notes that he informed Jaskowski that the company would need to fill her position in her absence. Plaintiff's Exh. 5. He then specifically states that he "also reiterated to Susan [Jaskowski] that she will return to her previous position *or* to a position of comparable compensation and responsibility." *Id.* (emphasis in the original). Finally, Karmin recalls that Mains told him that Rodman & Renshaw would find Jaskowski a comparable job upon her return—further buttressing Jaskowski's claims that defendants made the alleged assurances. Karmin Dep. at 44, 46.

Defendants argue that even if they made the alleged "promises" to Jaskowski, they could not have been unambiguous, coupled as they were with the knowledge that Rodman & Renshaw was considering hiring someone to fill the Human Resources position in her absence. This argument, however, must fail. Defendants neglect to explain how a decision to hire an acting Director of Human Resources was incompatible with an assurance that Jaskowski would be able to return to her position or one of comparable pay and responsibility. In fact, defendants' current contention that the two are mutually exclusive is belied by Mains' letter to Jaskowski's file, in which he indicates that he informed Jaskowski of Rodman & Renshaw's plans to fill her position while she was gone *at the same time* he reiterated to Jaskowski that she would return to her old job or one of comparable pay and responsibility. Plaintiff's Exh. 5. Certainly a question of fact remains as to whether defendants' conduct amounted to an unambiguous promise.

Next, defendants contend that even if Jaskowski received an unambiguous promise regarding her employment future, she has failed to present evidence that she reasonably relied on the promise, or that defendants could have foreseen and expected such reliance. Defendants' primary argument here is that, as Director of Human Resources, Jaskowski was well aware of Rodman & Renshaw's medical leave policy, which does not obligate the company to return employees to their original position or to create

a comparable position if such positions are not available.

While this argument has a superficial appeal, it is ultimately unpersuasive. Jaskowski has offered both verbal and tangible evidence that defendants in fact assured her that she would return to her position as Director of Human Resources or to a comparable job. Even if such guaranties exceeded Rodman & Renshaw's obligations under its medical leave policy, there is no evidence that such guaranties violated the policy, that they had not been made in the past, or that, when made, they were dishonored. In short, defendants offer no evidence to support the contention that once defendants voluntarily made the alleged promises to Jaskowski regarding her future employment, she should have ignored them. While there is certainly evidence that the alleged assurances were not required under the policy, absent evidence that the guaranties violate the policy, there remains a genuine issue as to whether Jaskowski reasonably relied on the alleged promises and whether defendants could have foreseen and expected such reliance.

Finally, defendants maintain that there is no evidence that Jaskowski detrimentally relied on the alleged promises. Specifically, defendants claim that Jaskowski did not turn down other job offers, nor is there any indication that she altered her behavior in reliance on defendants' assurances. We disagree with this evaluation of the evidence.

Jaskowski asserts that, in reliance on defendants' promises, she (1) continued working for Rodman & Renshaw during her pregnancy and even while on maternity leave, and (2) that she did not look for another job. Belittling these examples, defendants argue that, given Jaskowski's knowledge of the company's plans to fill her position, there is no evidence that Jaskowski's decision to continue working at Rodman & Renshaw during her pregnancy was done in reliance on defendants' alleged assurances. As discussed above, however, this argument is unpersua-

sive, as hiring of an acting Director was not necessarily inconsistent with a promise to return Jaskowski to the post or to place her in a comparable position.

Defendants further contend that, despite Jaskowski's protestations of injury, the fact remains that she was "physically unable to work" from October 21, 1991 until March 3, 1992. Accordingly, even if Jaskowski did not realize until February 14, 1992 that she could not count on getting an acceptable job placement at Rodman & Renshaw, she could not have worked during that time period anyway and thus could have suffered no injury. This argument misses the point.

Jaskowski claims that, in reliance on defendants' alleged promises, she failed to look for other work. There is no evidence that Jaskowski's medical condition prohibited her from submitting job applications or otherwise seeking employment during the relevant time period. Accordingly, a genuine issue exists regarding Jaskowski's detrimental reliance on the promises at issue, and we deny summary judgment on Count V.

**E. Applicability of the Civil Rights Act of 1991 to Count II**

 As is clear from our ruling on defendants' motion to dismiss, the Civil Rights Act of 1991 does not apply to those claims alleged to have taken place prior to November 21, 1991. Accordingly, the pre-November 21, 1991 claims are properly brought under Title VII and may not be heard by a jury.[10]

**F. Availability of Damages for Sexual Harassment Claim**

 Although Title VII allows a prevailing plaintiff to recover reinstatement, back pay, and other appropriate equitable remedy, the Seventh Circuit has unequivocally held that Title VII "does not contemplate damages." *Bohen v. City of East Chicago,* 799 F.2d 1180, 1184 (7th Cir.1986). Because Count III alleges sexual harassment that

---

10. We are somewhat bemused by Jaskowski's arguments decrying the use of summary judgment to dispose of portions of claims. Although defendants' argument is contained in a motion for summary judgment, they clearly are not requesting judgment on the pre-November 21, 1991 allegations, but are simply seeking to ensure that these allegations will not be brought before a jury. While arguably this issue should not have been raised in the present motion, in the interest of judicial economy, we address it here.

occurred before the effective date of the Civil Rights Act of 1991, only Title VII applies. Hence, Jaskowski is not entitled to general damages on Count III of her complaint.

### G. Scope of Plaintiff's EEOC Charge

■ Defendants seek to limit Count II to claims contained within Jaskowski's EEOC charge and to strike those allegations which ostensibly exceed the scope of the charge. Specifically, defendants contend that certain allegations—that there was a (1) disparity in the responsibility afforded Jaskowski and her replacement, (2) that Jaskowski was discriminated against based on her illness, her husband's employment and income status, her marital status, and her status as a working mother, in addition to her gender and pregnancy, and (3) that a "glass ceiling" existed for women's salaries at Rodman & Renshaw—fall beyond the charges outlined for the EEOC.

It is, of course, well established that a Title VII plaintiff may not include claims in a complaint that are not encompassed in the predicate EEOC charge. *See, e.g., Babrocky v. Jewel Food Co.,* 773 F.2d 857 (7th Cir. 1985); *D'Aquino v. Citicorp/Diner's Club, Inc.,* 750 F.Supp. 960 (N.D.Ill.1990). What makes application of this policy difficult in the instant case is the ambiguity surrounding the use to which Jaskowski intends to put the information contained in her interrogatory responses.[11] For example, in her Response, Jaskowski declares that she "seeks no relief with respect to her 'degree of responsibility claim' and intends to advance no such 'claim' at trial." Plaintiff's Response at 12. This declaration suggests, by omission, that Jaskowski *does* intend to pursue relief for discrimination based on the additional factors outlined in her updated interrogatory response and for wage discrimination based on evidence of a "glass ceiling." Although it remains somewhat unclear whether the evidence she cites is offered to support the wage discrimination claim laid out in the EEOC charge (i.e. that Garvey was paid more than Jaskowski because of his gender),

or whether it is intended to provide independent grounds for Title VII relief, for the purposes of this motion, we will assume that Jaskowski seeks independent relief based on her gender-plus and glass ceiling claims, and determine whether, if so tendered, they fall within her EEOC charge.

Allowing a plaintiff to bring claims outside the scope of an EEOC charge would permit the plaintiff to circumvent the agency's investigatory and conciliatory function. If, however, the contested allegations are like or reasonably related to the original allegations contained in the charge, then they may be included in a complaint. *Babrocky,* 773 F.2d at 864. In her EEOC complaint, Jaskowski claimed that she had been discriminated against based on her sex in that (1) Rodman & Renshaw hired a male replacement during her medical leave and paid him roughly $20,000 more than Jaskowski, (2) that the company failed to rehire her, either to her former position or a comparable one, despite assurances to the contrary, (3) that she had been offered a demoted position at lower pay, (4) that in similar situations, after medical leave, men had returned to their old jobs, (5) that Rodman & Renshaw's asserted need to hire a replacement was simply a pretext for sex discrimination, and (6) that the company hosted a hostile work environment for women, manifested by various comments about Jaskowski's pregnancy, women's breasts, and a "woman's proper place." Defendants' Exh. K. The question presented, then, is whether Jaskowski's new allegations are like or reasonably related to her EEOC charge.

Jaskowski's case is stronger with respect to her glass ceiling evidence. It is obvious from her EEOC charge that Jaskowski believes defendants discriminated between men and women in setting salary levels. Whether her charge specifically referred to a glass ceiling or not, Jaskowski clearly intended to establish wage discrimination based on gender. Given this, we find that these "new" allegations (i.e. the evidence of a glass ceiling) fall within the original EEOC charge,

---

**11.** We note that the disputed allegations do *not* appear anywhere in the complaint, but were set forth in Jaskowski's updated answers to defendants' first set of interrogatories. Moreover, the

Title VII claim contained in Count II simply declares that defendants discriminated against Jaskowski based on her gender, with no further exposition of the basis(es) for the claim.

and Jaskowski may offer evidence of a glass ceiling for women's salaries.

 Jaskowski's gender-plus theory of discrimination falls further afield of her predicate EEOC charge. That is, there is nothing in Jaskowski's charge to indicate that she intended to claim discrimination based on anything other than her gender and her condition of pregnancy. While Title VII prohibits discrimination based on factors other than pregnancy and gender, it does not protect all classes of people. *See, e.g., Whitmore v. Board of Education of DeKalb*, 90 C 20143, 1992 WL 70339 at *6, 1992 U.S.Dist. LEXIS at *16 (N.D.Ill. March 18, 1992) ("The clear language of [Title VII] does not enumerate marital status as a protected class, and discrimination based on marital status standing alone does not violate the protected classification of sex.") To the extent that the additional bases for discrimination outlined by plaintiff purport to represent separate protected classes (i.e. classes outside the bounds of a gender discrimination claim), they clearly exceed the scope of Jaskowski's EEOC charge and we do not hesitate to find that they are not properly before the Court.

Moreover, to the extent that Jaskowski contends that discrimination based on any of these factors, standing alone, constitutes gender discrimination, her efforts similarly fall short. Jaskowski offers no support for the notion that marital status, parental status, income earning ability of a spouse, illness, or second pregnancy (as distinct from pregnancy itself) are factors of independent significance in determining whether an employer accused of gender discrimination violated Title VII.[12] Without any authority for this proposition, we cannot conclude that discrimination based on these alleged factors falls within the EEOC charge. Accordingly, admission of evidence of unequal treatment based on marital status, parental status, income and employment of spouse, and illness depends upon its probative value to the gen-der discrimination claims properly before the Court.[13]

## IV. Conclusion

For the foregoing reasons, we grant in part and deny in part defendants' motion for summary judgment. It is so ordered.

---

12. Indeed, as cited above, the case law suggests that marital status, at least, does not provide a basis for a Title VII gender discrimination claim. *See Whitmore*, 1992 WL 70339 at *6, 1992 U.S.Dist. LEXIS at *16.

13. The parties may address the admissibility of this evidence in the motions in limine currently pending (and stayed) before Magistrate Judge Pallmeyer.