Karean F. SARGIS, Plaintiff,

v.

AMOCO CORPORATION, Defendant.

No. 96 C 7734.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 20, 1998.

Claudia Oney, Danielle Lisa Weiss, Claudia Oney, P.C., Chicago, IL, for plaintiff.

Michael A. Weinbaum, Lisa D. Freeman, Amoco Corp., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Karean Sargis, has sued her former employer, Amoco Corporation ("Amoco"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d). Amoco moves for summary judgment on all claims. For the following reasons, Amoco's motion is granted in part and denied in part.

### Background

Karean Sargis worked at Amoco for twenty-six years before her termination in June, 1995. Amoco is a multi-billion dollar global petrochemical company. At the time Ms. Sargis was fired she was working in Amoco's Banking Operations Department. Banking Operations controls the flow of Amoco's money in and out of its bank accounts and generally monitors Amoco's investment income. Banking Operations is split into three different "desks," each relating to Amoco's major operating areas: (1) Production, (2) Oil, and (3) "Corp/Chem." Each desk is run by a Cash Management Analyst ("Analyst"). The Analyst executes wire transfers and monitors bank accounts to determine a daily cash position and to place excess money in revenue generating areas. Wire transfers are necessary to move money to outside parties or between Amoco's accounts. By determining a cash position as early as possible in the day, Amoco's money may be quickly moved into accounts that generate the greatest yields and lowest finance charges.

Ms. Sargis became an Analyst on the Production desk in July, 1993, after her position in Amoco's Pension Investment Department was eliminated. She began working on bank accounts for Amoco's international entities and eventually added bank accounts for Amoco's domestic entities. In September, 1994, Ms. Sargis was transferred to the "easier" "Corp/Chem" desk. In May, 1995, Amoco placed Ms. Sargis on a thirty day probationary period. At the end of June, Ms. Sargis' employment was terminated.

## Age and Gender Discrimination

Ms. Sargis attempts to prove age and gender based employment discrimination utilizing the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ms. Sargis must first establish a prima facie case of discrimination by showing: (1) she belongs to a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) Amoco treated similarly-situated employees outside her classification more favorably. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997); *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996). If Ms. Sargis makes out a prima facie case of discrimination, the burden of production shifts to Amoco to articulate a "legitimate, nondiscriminatory reason for its action." *Plair*, 105 F.3d at 347. Should Amoco meet the burden of showing a nondiscriminatory reason for Ms. Sargis' termination, the burden shifts back to Ms. Sargis to show Amoco's explanation is simply a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804; *Denisi*, 99 F.3d at 864.

Ms. Sargis has met the first, third, and fourth prongs of the prima facie case. She is a woman, older than forty-five, who was fired. Additionally, other Analysts, both men and younger women, performing substantially similar duties, were not fired.[1]

■ Amoco argues, however, that, based on Ms. Sargis' inadequate job performance, she cannot make out a prima facie case of discrimination and even if she could, there existed legitimate, nondiscriminatory reasons for her termination. Thus, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same evidence.

Amoco argues Ms. Sargis was a marginal performer when she worked on the Production desk in 1993 and 1994. Ms. Sargis was transferred to the "Corp/Chem" desk at the end of 1994. After Ms. Sargis moved to the "Corp/Chem desk," "Corp/Chem" bank accounts rose from sixteen percent to forty percent of the total average collected balances for Banking Operations. (Defendant's 12(M) Statement ¶¶ 102, 103).[2] Ms. Sargis was frequently the last Analyst to determine a cash position on the "Corp/Chem" desk. (Defendant's 12(M) Statement ¶¶ 111, 120).[3] Ms. Sargis did not receive a salary increase or performance award in 1995. (Defendant's 12(M) Statement ¶ 118). In February, March, and May, 1995, Ms. Sargis attended meetings with her supervisor where she was informed her work needed improvement. (Rule 12(M) Statement, Rule 12(N) Response ¶¶ 109, 116, 129).

In May, 1995, Ms. Sargis was placed on a thirty day probationary period. She was required to meet the 9:30 a.m. cash position deadline, maintain an average collected account balance of no more than $1.5 million, and accurately execute wire transfers. While maintaining $1.5 million as an average collected account balance was an ambitious goal, it was not impossible, as the "Corp/Chem" desk had maintained a $1.2 million average account balance in May, 1995. (12(M) Statement ¶ 147; 12(N) Response ¶ 147). By mid-June, Ms. Sargis was maintaining an average collected balance of $2.6 million and it looked unlikely she would meet the $1.5 million goal. (12(M) Statement

---

1. Amoco argues Ms. Sargis does not meet the fourth prong of the prima facie case because no employees were performing as poorly as Ms. Sargis and thus, no similarly-situated employees were treated more favorably when Ms. Sargis was fired. Amoco defines "similarly-situated" too narrowly, merging the fourth prong into Amoco's right to show Ms. Sargis was not performing her job satisfactorily and that there were legitimate, nondiscriminatory reasons for her termination. *Tonella v. Environmental Sys. Design, Inc.*, No. 96 C 103, 1997 WL 112837, at *6–7 (N.D.Ill. Mar.10, 1997). Ms. Sargis need only show that men and younger individuals, responsible for the same duties as herself, were not fired. Ms. Sargis has done so by pointing to Dan O'Shea, Denise Maltby, Maya Koren, and Robin Oldham.

2. Ms. Sargis does not deny this figure, although she says she was never given underlying data. (Rule 12(N) Response ¶¶ 102, 103, 127). In the absence of a timely motion, Ms. Sargis cannot rely on the alleged absence of records.

3. Ms. Sargis admits this fact as to one period and does not deny it as to another.

¶ 152).[4] Additionally, at the end of June, although only one payment was requested, Ms. Sargis accidentally wired two exact payments of $3.6 million to Amoco's Hong Kong office. (Defendant's 12(M) Statement ¶ 162; 12(N) Response).

Ms. Sargis argues that her probationary goals and thus, Amoco's job expectations, were designed to be impossible to meet. To be legitimate, Amoco's employment expectations need only be objectively reasonable and adequately communicated to Ms. Sargis. *Mills v. First Fed. Savings & Loan Ass'n of Belvidere*, 83 F.3d 833, 844 n. 7 (7th Cir. 1996).[5] Ms. Sargis' probationary goals were agreed upon by both the Manager and Supervisor of Banking Operations and were adequately communicated to Ms. Sargis. The 9:30 a.m. deadline was reasonable as evidenced both by the inclusion of the deadline in the Cash Management Analyst job description and by the ability of other Analysts to meet the deadline. Indeed, Ms. Sargis met the deadline at least half of the time she was at Amoco. While the $1.5 million average collected account balance was ambitious, it was also reasonable. The month before Ms. Sargis went on probation the "Corp/Chem" desk maintained an average collected balance of $1.2 million.[6] Finally, the request that wire transfers be completed accurately was reasonable.

■ Mr. Sargis also argues she was meeting Amoco's expectations because she received a rating of a "strong middle" performer based on her 1993 performance. Although a "strong middle" rating was awarded, Ms. Sargis was ranked eight out of nine employees in Banking Operations. Further, Ms. Sargis' 1993 performance is not at issue in this case. "The critical issue is whether [Ms. Sargis] was performing well in her job at the time of her termination." *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir.1993).

■ Even if Ms. Sargis could satisfy the requirements of a prima facie case of discrimination, she has failed to present evidence to support her claim that Amoco's nondiscriminatory reasons for her termination were pretext. Ms. Sargis may prove pretext by showing "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Testerman v. EDS Technical Prod. Corp.*, 98 F.3d 297, 303 (7th Cir.1996). Ms. Sargis loses if Amoco "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997). The burden rests with Ms. Sargis to prove Amoco did not honestly believe in the reasons it proffered for her termination. *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir.1996).

■ Ms. Sargis argues that since her probationary goals were insincere and impossible to meet, Amoco's proffered nondiscriminatory reasons are pretext. As noted above, the 9:30 a.m. deadline was the main job requirement of an Analyst. Although often tardy in the year leading up to her probation, Ms. Sargis met this goal during part of her June probationary period, indicating the goal was attainable. Indeed, the goal was easily met by replacement Analysts during periods Ms. Sargis was on vacation. Although the $1.5 million average collected balances goal was ambitious, Ms. Sargis has not presented

---

4. Plaintiff's response does not deny this fact.

5. Ms. Sargis' complaint that her probationary goals were unfair because they were not required of other Analysts is inapposite. Ms. Sargis was in a unique position, on probation, and under heightened scrutiny based on previous poor performance. Although the probationary goals were not required of other Analysts, this is explained by the fact that the other Analysts were, for the most part, already meeting the goals imposed on Ms. Sargis' during her probation. Indeed, Ms. Sargis testified her probationary goals were part of her normal duties as an Analyst. (Sargis Dep. at 235).

6. Ms. Sargis concedes the $1.5 million goal also had been met in other months. (Pl. Brief at 13). Ms. Sargis blames her inability to reach this goal, in part, on a deposit that was made into a closed Citibank account that she believed she no longer had to monitor. Ms. Sargis, however, monitored the account both before and after the deposit, indicating she was aware money might still be deposited in the account. (Tyszko. Ex. 8 at 21–22).

evidence that it was insincere or unattainable. It had been achieved in previous months and conformed to Amoco's desire to maintain as small an average collected balance as possible.[7] Based on this evidence, Amoco's decision to set Ms. Sargis' goal at $1.5 million appears to be a legitimate way of determining whether Ms. Sargis could perform her job at the level required of Amoco's Analysts.[8]

Finally, the requirement that wire transfers be completed accurately is not unreasonable. Although Analysts had likely made wire transfer errors in the past, Ms. Sargis does not present evidence that such errors occurred "regularly" or that it would be unreasonable to go one month without making a mistake.[9] Ms. Sargis argues that Amoco's probationary goals amount to strong circumstantial evidence of pretext. The probationary goals were reasonable and meant to determine whether Ms. Sargis could or could not handle the job requirements of a Banking Operations Analyst.[10] Ms. Sargis' pretext claim is also unpersuasive in light of evidence that indicates Patricia Tyszko, a fifty-seven year old woman, temporarily assumed the daily responsibilities of Ms. Sargis' job after Ms. Sargis' termination. (Rule 12(M) ¶¶ 58, 168). Ms. Sargis admits that Ms. Tyszko was promoted to Supervisor of Banking Operations in September, 1995. (Rule 12(M) ¶ 170).

A court is not "empowered to act as a 'super-personnel department' and decide if [a defendant's] firing [of an employee] was unwise or unjustified." *Castleman v. Acme Boot Co.* ., 959 F.2d 1417, 1422 (7th Cir.1992) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986)). Although Ms. Sargis feels her termination was unjustified,

she has not presented evidence that Amoco's nondiscriminatory reasons for her firing are pretext. *See Mister v. Illinois Cent. Gulf R.R. Co.*, 832 F.2d 1427, 1435 (7th Cir.1987) (finding a mistaken business decision does not prove pretext). Based on her inability to prove a prima facie case and her inability to prove Amoco's nondiscriminatory reasons for her termination are pretext, Ms. Sargis' age and gender discrimination claims fail.

*Equal Pay Act and Title VII*

Ms. Sargis argues that she was paid less than a male Analyst, Daniel O'Shea, and that this wage disparity violates both the Equal Pay Act and Title VII. Ms. Sargis may prove a prima facie violation of the Equal Pay Act by showing: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Fallon v. State of Ill.*, 882 F.2d 1206, 1208 (7th Cir.1989) (citations omitted). Amoco does not contest Ms. Sargis' ability to make out a prima facie case under the Equal Pay Act. Mr. O'Shea, an Oil desk Analyst performing similar duties under the same conditions as Ms. Sargis, made approximately $12,000 more than Ms. Sargis.[11]

Since Ms. Sargis has made out a prima facie violation of the Equal Pay Act, the burden of proof shifts to Amoco to show the pay disparity resulted from: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Id.* at 1211. Amoco argues that the salary disparity resulted from Mr. O'Shea's tenure, experience, and perfor-

---

7. A low average collected balance indicates the Analyst is successfully moving money into accounts that will generate revenue for Amoco and out of accounts that do not earn interest.

8. Ms. Sargis argues her inability to meet the $1.5 million goal was not entirely her fault. The issue is not whether Ms. Sargis can explain her failure, but whether Amoco used it as pretext. Ms. Sargis does not present evidence, which she must if she is to prevail, that Amoco purposely set her up to fail or used her failure as an excuse to discriminate.

9. Ms. Sargis cites the deposition of Pat Tyszko to prove wire mistakes occurred regularly. (Pl. Brief at 18). The cited testimony does not support Ms. Sargis' contention.

10. As noted above, Ms. Sargis testified the probationary goals were part of her normal duties as an Analyst. (Sargis Dep. 235).

11. At the time of her termination Ms. Sargis was at Amoco's grade level nine while Mr. O'Shea was at grade level ten.

mance. At the time of Ms. Sargis' termination, Mr. O'Shea had worked for Amoco for seven years longer than Ms. Sargis and had been an Analyst since 1977. (Burwell Dec. Ex. B). Mr. O'Shea was given a raise to grade level 10 in 1986, nine years after becoming an Analyst. Ms. Sargis, like Mr. O'Shea, began at grade level nine when she became an Analyst. She spent less than two years as an Analyst before her termination. In 1994, both Ms. Sargis and Mr. O'Shea received two percent raises. (Burwell Dec. Ex. B; Pl.Ex. 43).

In essence, Amoco argues that Mr. O'Shea earned more than Ms. Sargis due to a seniority system or merit system or both. The circumstantial evidence discerned in this case indicates that Amoco, like many employers, monetarily rewards employees, such as Mr. O'Shea, for their years of service and good work. Amoco, however, has presented no testimony or documentary evidence that a seniority or merit system exists at Amoco, what criteria Amoco uses to determine seniority or merit raises, and how such a system, if it does exist, was used in this case.[12] Although not addressed in the Seventh Circuit, other circuits have found that when an employer relies on an affirmative defense such as a seniority system, "[the employer] must be able to identify standards for measuring seniority which are systematically applied and observed." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir.1995); *see also E.E.O.C. v. Aetna Ins. Co.*, 616 F.2d 719, 725 (4th Cir. 1980) ("[A] merit 'system' must be an organized and structured procedure whereby employees are evaluated systematically according to predetermined criteria.").

Simply providing documentation that Mr. O'Shea worked at Amoco longer than Ms.

Sargis is insufficient for Amoco to carry its burden of persuasion on its affirmative defense. Mr. O'Shea moved to a grade ten after eighteen years with Amoco while Ms. Sargis, who had been with Amoco over twenty-six years at the time of her termination, never reached grade ten. An employer's statement that a pay differential is due to seniority and merit, without more, does not make it so. Accordingly, summary judgment is denied on Ms. Sargis' Equal Pay Act claim.[13]

■ Ms. Sargis also claims the wage disparity violates Title VII. Under Title VII, the burden of persuasion remains on Ms. Sargis to prove discriminatory intent by Amoco in paying her less than Mr. O'Shea. Thus, on the same facts, Ms. Sargis could succeed on her Equal Pay Act claim but fail on her Title VII claim. "To prevail on a Title VII wage discrimination claim, a plaintiff must either proffer direct evidence of intentional sex discrimination in pay, or meet the equal pay standard of the Equal Pay Act." *Jaskowski v. Rodman & Renshaw, Inc.*, 842 F.Supp. 1094, 1099 (N.D.Ill.1994); *accord Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 851 F.Supp. 291, 299 (N.D.Ill.1994). As noted above, Ms. Sargis has met the equal pay standard of the Equal Pay Act.

As in any Title VII case, Amoco bears the burden of production to show a nondiscriminatory justification for the wage differential between Ms. Sargis and Mr. O'Shea. *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir.1994), Amoco argues Mr. O'Shea's seniority and performance explain his higher salary. But, as before, Amoco fails to offer any testimony or documentary evidence indicating seniority or merit are

---

**12.** Amoco has the burden of persuasion on its affirmative defense.

**13.** Amoco argues wage differentials based on experience and different employment histories constitute a "factor other than sex" that rebuts Ms. Sargis' claim. While there is no doubt the law allows Amoco to pay different wages based on an employee's experience, this does not ameliorate Amoco's burden to present evidence explaining how and to what extent experience and prior employment history are taken into account in determining salaries. The cases Amoco cites for its argument are inapposite to Ms. Sargis' case.

In each, the employer provided more evidence explaining the wage differential than Amoco provides. *See Covington v. Southern Ill. Univ.*, 816 F.2d 317, 319 (7th Cir.1987) (finding defendant had a "policy" of maintaining an employee's salary after a job change); *Koerts v. MCI Telecomm. Corp.*, No. 95 C 1039, 1997 WL 30987, *11 (N.D.Ill. Jan.22, 1997) (employer provided evidence that salaries were calculated using "an objective, nondiscretionary salary matrix"). Amoco has not presented evidence of a policy or a method of calculating salaries that accounts for seniority or performance.

factors in determining salary. Amoco simply offers evidence indicating Mr. O'Shea worked at Amoco longer than Ms. Sargis and then argues that seniority was the determining factor in the wage differential. While a close call, Amoco has not met its burden of production. Accordingly, summary judgment on Ms. Sargis' Title VII claim for unequal pay is denied.

### Conclusion

For the foregoing reasons, Amoco's motion for summary judgment on Ms. Sargis' gender and age discrimination claims is granted. Summary judgment is denied on Ms. Sargis' unequal pay claims under the Equal Pay Act and Title VII.